**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ARTHUR MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-1438-PRW |
| | ) | |
| CREEK COUNTY CHILD SUPPORT OFFICE, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court are the Motion to Dismiss Complaint and Memorandum in Support Thereof (Dkt. 7), filed by Defendants Creek County Child Support Office, Oklahoma County Child Support Office, and Josh Holloway, and pro se Plaintiff Arthur Miller's Jurisdictional Rebuttal to Defendants' Motion to Dismiss (Dkt. 9). Upon review, the Court **GRANTS** the Motion to Dismiss (Dkt. 7) and **DISMISSES** the Complaint (Dkt. 1) **WITHOUT PREJUDICE**.

***Background***[1]

Miller appears to contest the validity of a child-support order enforced against him by Creek County Child Support Office, Oklahoma County Child Support Office, and Josh

[1] Miller filed what could be two complaints as a single document. For purposes of this Order, however, the Court views the Complaint as a whole.

Holloway in his individual capacity. The Complaint's first recitation of facts states only as follows:

> Plaintiff was subjected to multiple National Medical Support Notices and Electronic Income Withholding Orders (eIWOs) that were materially incomplete, missing federally required information, missing the child's first name, and not on valid OMB-approved forms. Defendants used these invalid documents to seize Plaintiff's wages in violation of federal law, including 42 U.S.C. § 666, 45 C.F.R. § 303.32, and 45 C.F.R. § 303.100. Defendant Josh Holloway personally participated by preparing or enforcing defective orders. Plaintiff requested correction, but Defendants refused to issue valid documents or verify the accuracy of the information used to seize income.[2]

The second recitation of facts includes even less information:

> Plaintiff alleges that Defendants transmitted or relied upon invalid or incomplete digital support services documentation, failed to comply with required signature, match, and federal documentation standards, and relied upon materials alleged to be nonmailable under federal postal regulations. Plaintiff also alleges instances of improper processing of USPS missing mail forms and incomplete or inaccurate federal records.[3]

The Complaint then includes ten claims for relief, including (1) "Fourteenth Amendment Due Process Violation under 42 U.S.C. § 1983," (2) "Fourth Amendment Unreasonable Seizure under 42 U.S.C. § 1983," (3) "Use of false or materially incomplete documents under color of state law," (4) "Supervisory liability against Creek and Oklahoma County Child Support Offices," (5) "Mail Fraud," (6) "Wire Fraud," (7) "False Statements," (8) "Nonmailable Matter," (9) "Privacy Act," and (10) "Alleged Deprivation of Information Relating to Motion to Quash."[4] Miller provides no explanation of how the

---

[2] Compl. (Dkt. 1), at 1–2.

[3] *Id.* at 4–5.

[4] *Id.* at 3, 5.

factual allegations support granting relief on any of these claims. Miller then requests $450,000 in damages and "seeks declaratory and injunctive relief invalidating the defective orders and prohibiting further enforcement actions based on incomplete or noncompliant documents."[5] On December 26, 2025, all three Defendants moved to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim.

***Legal Standard***

In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court must satisfy itself that the pleaded facts state a claim that is plausible.[6] All well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[7] Additionally, the Court must "draw all reasonable inferences in favor of the non-moving party."[8] While factual allegations are taken as true, a court need not accept mere legal conclusions.[9] "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough to state a claim.[10] Rule 12(b)(1) motions, on the other hand, generally take one of two forms, either "a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction," or "a challenge to the actual

---

[5] *Id.*

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[7] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted).

[8] *Doe v. Woodard*, 912 F.3d 1278, 1285 (10th Cir. 2019) (citation omitted).

[9] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012).

[10] *Id.* at 1191 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

facts upon which subject matter jurisdiction is based."[11] The legal standard depends on which type of challenge the movant asserts. Defendants raise a facial attack. The Court therefore confines its review to the Complaint and accepts all allegations as true—much like Rule 12(b)(6) review.[12]

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[13] Courts should not, however, "assume the role of advocate for the pro se litigant."[14] And the broad construction of a pro se plaintiff's complaint "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."[15] Because a pro se plaintiff "requires no special legal training to recount the facts surrounding his alleged injury," his pro se status does not overcome the rule that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[16]

Miller need not plead a formulaic recitation of every element. He must, however, plead "factual content that allows the court to draw the reasonable inference that the

---

[11] *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citation omitted).

[12] *See United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001).

[13] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

[14] *Id.*

[15] *Id.*

[16] *Id.* (citations omitted).

defendant is liable for the misconduct alleged."[17] The elements of the claims he invokes remain a useful guide in deciding whether that inference is available.[18]

***Discussion***

**I. The Child Support Offices are entitled to Eleventh Amendment immunity.**

"The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state."[19] An assertion of that immunity "concerns the subject matter jurisdiction of the district court" and is properly taken up under Rule 12(b)(1).[20] Eleventh Amendment immunity "extends to states and state entities but not to counties, municipalities, or other local government entities."[21] The Supreme Court has "repeatedly refused to extend sovereign immunity to counties."[22] The question is thus whether the Creek County Child Support Office and the Oklahoma County Child Support Office are county agencies at all, or are instead local offices of a state agency.

---

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[18] *Khalik*, 671 F.3d at 1192.

[19] *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (internal quotation marks and citations omitted).

[20] *Washington v. Okla. State Dep't of Human Servs.*, 802 F. App'x 419, 420 (10th Cir. 2020) (unpublished) (internal quotation marks omitted) (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002)). The Court cites unpublished decisions of the Tenth Circuit for their persuasive value, consistent with Tenth Cir. R. 32.1 and Fed. R. App. P. 32.1

[21] *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).

[22] *N. Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006).

Oklahoma law answers that question. The Department of Human Services is "the single state agency designated to administer a statewide plan for child support" under Title IV-D of the Social Security Act.[23] The Child Support Enforcement Division of DHS is "the state agency designated to administer the child support enforcement program for the State of Oklahoma and its District Offices."[24] The Division may initiate enforcement proceedings, obtain judgments for arrearages, and effectuate income assignments.[25] The Tenth Circuit has held that DHS is an arm of the State,[26] and that Oklahoma Child Support Services is a "state entity" against which the Eleventh Amendment prohibits suit in federal court.[27] The offices named in the caption, though geographically identified by county, are district offices of that statewide division rather than political subdivisions of Creek County or Oklahoma County.

The Tenth Circuit's arm-of-the-state factors confirm as much. The Court considers (1) "the character ascribed to the entity under state law"; (2) "the autonomy accorded the entity under state law"; (3) "the entity's finances"; and (4) "whether the entity in question

---

[23] 56 O.S. § 237(A).

[24] *Id.* at § 237.7(1).

[25] *Id.* at § 240.1.

[26] *See, e.g.*, *McKinney v. State of Okla., Dep't of Hum. Servs., Shawnee OK*, 925 F.2d 363, 365 (10th Cir. 1991) ("[T]he eleventh amendment bars [the] plaintiff from seeking money damages against the Oklahoma Department of Human Services."); *Washington*, 802 F. App'x at 420; *Miller v. Okla. Dep't of Hum. Servs.*, No. CIV-22-507-D, 2022 WL 16541217, at *2 (W.D. Okla. Oct. 28, 2022) (collecting cases).

[27] *Madden v. Madden*, 683 F. App'x 685, 686 (10th Cir. 2017) (unpublished).

is concerned primarily with local or state affairs."[28] State law ascribes the child support function to DHS as a single statewide agency and to its District Offices; those offices operate under the Division's statutory charge, not as independent county departments; the program is financed with federal and state funds that DHS is authorized to accept and expend, and fees are deposited in the Department's Administration Fund;[29] and the offices administer a statewide IV-D plan, not a municipal program.

The party asserting arm-of-the-state status ordinarily bears the burden of establishing it.[30] Defendants have carried that burden. Unlike the novel hospital authority at issue in *Hennessey*, these offices perform a function that Oklahoma statutes assign to DHS and that the Tenth Circuit has already treated as an arm of the State. On this facial Rule 12(b)(1) challenge, the Court may resolve that legal question from the governing statutes and controlling precedent.

Oklahoma has not consented to suit in federal court,[31] and 42 U.S.C. § 1983 does not abrogate the State's immunity.[32] Miller also seeks injunctive and declaratory relief. *Ex parte Young* permits a plaintiff to pursue prospective equitable relief against a state officer, but it "has no application in suits against the States and their agencies, which are barred

[28] *Steadfast*, 507 F.3d at 1253; *accord Hennessey v. Univ. of Kan. Hosp. Auth.*, 53 F.4th 516, 528 (10th Cir. 2022).

[29] *See* 56 O.S. §§ 237, 237.7(1).

[30] *Hennessey*, 53 F.4th at 531–32.

[31] 51 O.S. § 152.1(B) ("[I]t is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution.").

[32] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64–66 (1989).

regardless of the relief sought."[33] Miller's claims against the Child Support Offices—damages and equitable relief alike—are therefore dismissed without prejudice.[34]

Holloway is differently situated because he is named in his individual capacity. The Eleventh Amendment "does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983."[35] Injunctive or declaratory relief that would run against Holloway in office is effectively an official-capacity claim.[36] *Ex parte Young* then supplies the relevant exception to immunity, provided the complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[37] Holloway's individual-capacity damages claims are thus not barred by the Eleventh Amendment, but, as explained below, *Younger* abstention independently requires the Court to deny equitable relief.

## II. Younger abstention bars Miller's requests to halt or invalidate ongoing child-support enforcement.

*Younger* is a doctrine of abstention, not a defect of Article III jurisdiction. Once its conditions are met, however, "there is no discretion to grant injunctive relief."[38] Abstention

---

[33] *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also Ex parte Young*, 209 U.S. 123 (1908).

[34] *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Okla. v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) ("Dismissal on sovereign immunity grounds…must be without prejudice.").

[35] *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991) (internal quotation marks omitted).

[36] *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

[37] *See Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted).

[38] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 816 n.22 (1976).

is confined to three "exceptional" categories of state proceedings: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."[39] If the state proceeding falls within one of those categories, the Court then applies the *Middlesex* factors to determine whether there is: (1) an ongoing state criminal, civil, or administrative proceeding; (2) an adequate state forum; and (3) an important state interest.[40]

The state proceedings here fall within *Sprint's* second category. Civil enforcement actions warrant abstention when they are "akin to a criminal prosecution" in important respects—characteristically initiated by the State in its sovereign capacity to sanction the federal plaintiff for a wrongful act.[41] Oklahoma's IV-D agency may initiate enforcement proceedings, obtain arrearage judgments, and issue income-withholding orders.[42] Miller alleges that Defendants used National Medical Support Notices and Electronic Income Withholding Orders to seize his wages, and he asks this Court to invalidate those instruments and "prohibit[] further enforcement actions."[43] That is a challenge to coercive,

[39] *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 367–68 (1989)); *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 522 (10th Cir. 2023); *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 669–70 (10th Cir. 2020).

[40] *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

[41] *Sprint*, 571 U.S. at 79 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).

[42] *See* 56 O.S. §§ 237, 237.7, 240.1, 240.2.

[43] Compl. (Dkt. 1), at 3, 5.

state-initiated collection of a support obligation, which is the very sort of civil enforcement to which *Younger* extends.[44]

The same request also fits *Sprint*'s third category. *Younger* reaches civil actions that would interfere with "orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions," including the processes by which a State compels compliance with its courts' judgments.[45] Income withholding is the statutory means by which Oklahoma gives effect to child-support orders.[46] A federal decree invalidating those instruments and prohibiting further enforcement would interfere with that compliance process.[47]

The *Middlesex* factors are met. First, there is an ongoing state proceeding. Miller does not dispute that child-support enforcement related to his claims remains afoot. The harms alleged stem from "multiple National Medical Support Notices and Electronic Income Withholding Orders,"[48] and he seeks "an order halting and prohibiting all *ongoing* . . . actions, orders, or determinations by Defendants related to the matters alleged in this Complaint."[49] Ongoing wage withholding under those instruments is thus continuing

---

[44] *See Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (*Younger* applied to a state civil-enforcement action to recover fraudulently obtained welfare benefits).

[45] *Sprint*, 571 U.S. at 72–73 (citation omitted).

[46] *See* 56 O.S. § 237.7(14); 43 O.S. § 115.

[47] *See Stephens v. Child Support Servs. of Okla. Dep't of Hum. Servs.*, No. 24-cv-216-JDR-CDL, 2025 WL 1194950, at *4–5 (N.D. Okla. Apr. 25, 2025) (abstaining on those grounds), *aff'd*, 2026 WL 125755 (10th Cir. Jan. 16, 2026) (unpublished).

[48] Compl. (Dkt. 1), at 2.

[49] *Id.* at 5 (emphasis added).

enforcement of a live support obligation. And the State may pursue enforcement in district court or via administrative law judges who conduct hearings that are judicial in nature.[50]

Second, Miller has not shown that the state forum is inadequate. "Minimal respect for the state processes . . . precludes any *presumption* that the state courts will not safeguard federal constitutional rights."[51] Oklahoma law affords notice and a hearing on enforcement and income assignment: within fifteen days of being served, an obligor may request a hearing, and the administrative court then hears identity and arrearage disputes.[52] Constitutional claims can be raised there and on review.[53] Unless state law clearly bars the federal claims, the state forum is adequate,[54] and Miller identifies no such bar. Third, "[f]amily relations are a traditional area of state concern."[55] Enforcement of child-support obligations is among those interests.

When the *Younger* conditions are met, abstention is mandatory unless an exception applies: a proceeding commenced in bad faith or to harass, a flagrantly and patently unconstitutional statute, or other extraordinary circumstances creating a threat of great and

---

[50] *See* 56 O.S. §§ 237.7(3), 240.1, 240.2; *Middlesex*, 457 U.S. at 432–34; *Ohio Civ. Rts. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986).

[51] *Middlesex*, 457 U.S. at 431 (emphasis in original).

[52] *See* 56 O.S. § 240.2.

[53] *See id.* at § 240.3.

[54] *See Moore v. Sims*, 442 U.S. 415, 430 (1979); *Winn*, 945 F.3d at 1258.

[55] *Moore*, 442 U.S. at 435; *accord Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996).

immediate irreparable injury.[56] Miller's allegations that the withholding notices were incomplete or not on OMB-approved forms, taken as true, do not meet that heavy burden.[57] The Court therefore abstains.

The proper disposition of these claims depends on the relief sought. Claims for injunctive or declaratory relief that would interfere with the state proceedings must be dismissed without prejudice. *Younger* also extends to damages claims when a federal judgment would have preclusive effects on the pending state proceeding, but the Supreme Court has "permitted federal courts applying abstention principles in damages actions to enter a stay, but [has] not permitted them to dismiss the action altogether."[58] The Court therefore dismisses Miller's claims for injunctive and declaratory relief. It does not stay any damages claim against Holloway, because those claims independently fail to state a claim on which relief can be granted, as explained in Part III. The damages claims against the Child Support Offices have already been dismissed on Eleventh Amendment grounds.

To the extent the Complaint is instead read as an attack on a final state-court support judgment (asking this Court to invalidate the underlying order itself rather than to halt ongoing administrative enforcement) the *Rooker-Feldman* doctrine would independently bar that request. *Rooker-Feldman* precludes "state-court losers complaining of injuries

---

[56] *Phelps v. Hamilton*, 59 F.3d 1058, 1063–64 (10th Cir. 1995); *see also Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999).

[57] *See Phelps,* 59 F.3d at 1066–68 (the plaintiff bears a "heavy burden" to show an exception).

[58] *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996).

caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[59]

**III. The remaining claims fail to state a claim, and leave to amend would be futile.**

"Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[60] That is the case with each of Miller's remaining theories.

Several counts cannot be cured by repleading. Mail fraud, wire fraud, false statements, and "nonmailable matter" are criminal prohibitions. Criminal statutes that "do not provide for a private right of action" are "not enforceable through a civil action."[61] The Privacy Act governs federal agencies.[62] It does not supply a cause of action against a state child-support office or a state official.[63] And supervisory-liability claims against the offices fail for the additional reason that those offices, as arms of the State, are not "persons" under § 1983.[64] The count styled "Alleged Deprivation of Information Relating to Motion to

---

[59] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[60] *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (quoting *Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001)).

[61] *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007).

[62] *See* 5 U.S.C. § 552a(a)(1) (defining "agency" by reference to 5 U.S.C. § 552(e)).

[63] *See Oliver v. Garfield Cnty. Det. Facility*, No. CIV-10-1281-HE, 2012 WL 668802, at *3 (W.D. Okla. Feb. 8, 2012).

[64] *Will*, 491 U.S. at 64–66, 71.

Quash," meanwhile, identifies no recognized federal cause of action and is unsupported by well-pleaded facts.

The Complaint's theory of liability rests on alleged noncompliance with Title IV-D documentation requirements, including 42 U.S.C. § 666 and 45 C.F.R. §§ 303.32 and 303.100. But Title IV-D "does not give individuals a federal right to force a state agency to substantially comply with Title IV-D."[65] Those provisions are directives to the States as conditions of federal funding rather than privately enforceable individual rights. And Spending Clause statutes create rights enforceable under § 1983 only when Congress unambiguously says so.[66] Miller identifies no such right.

What remains are conclusory constitutional labels tied to a single sentence that Holloway "personally participated by preparing or enforcing defective orders."[67] In a § 1983 case, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*"[68] because individual liability must rest on personal involvement in the alleged violation.[69] In other words: conclusory allegations without supporting factual averments are insufficient.[70] And even construed liberally, the Complaint does not identify the process Miller was due and denied, or facts making a

---

[65] *Blessing v. Freestone*, 520 U.S. 329, 333 (1997), *abrogated on other grounds by Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002).

[66] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).

[67] Compl. (Dkt. 1), at 3.

[68] *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

[69] *Iqbal*, 556 U.S. at 686.

[70] *Hall*, 935 F.2d at 1110.

Fourth Amendment claim plausible, as opposed to disagreement with the completeness of IV-D forms. And incomplete paperwork, without more, is not a constitutional violation.

Amendment would not cure these defects. Claims against the Child Support Offices cannot proceed in this Court are barred by sovereign immunity regardless of additional facts. Criminal statutes and the Privacy Act do not authorize private claims. And Title IV-D doesn't confer the rights Miller seeks to enforce. And any reformulated request that this Court invalidate, halt, or declare unlawful the ongoing withholding of support would remain barred by *Younger*. Leave to amend is therefore denied as futile.

***Conclusion***

The Court hereby **GRANTS** Defendants' Motion (Dkt. 7) and **DISMISSES WITHOUT PREJUDICE** the Complaint (Dkt. 1). Miller's claims against Creek County Child Support Office and Oklahoma County Child Support Office are dismissed for lack of subject-matter jurisdiction. His requests for injunctive and declaratory relief are dismissed without prejudice under *Younger*. His remaining claims against Holloway are dismissed without prejudice for failure to state a claim. Although a purely merits dismissal may be entered with prejudice where amendment would be futile, the Court enters a uniform without-prejudice judgment because the Eleventh Amendment and *Younger* bars cannot be dismissed with prejudice. Leave to amend in this action is denied as futile.

**IT IS FURTHER ORDERED** that all pending motions in this case are **DENIED AS MOOT**.

**IT IS SO ORDERED** this 3rd day of September 2026.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE